KATHLEEN RUDIS, Plaintiff-Appellant, v. NATIONAL COLLEGE OF EDUCATION *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—88—3562

Opinion filed November 30, 1989.

Erwin Grombacher, of Chicago for appellant.

Robert E. Arroyo and John A. Klages, both of Keck, Mahin & Cate, of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Kathleen Rudis, filed a two-count amended complaint against the defendants, National College of Education and three members of the school's administration, alleging in count II that the defendants were liable to her for the intentional infliction of emotional distress. The defendants, pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), moved to dismiss count II of the plaintiff's complaint for failure to state a cause of action. The trial court granted the defendant's motion, and the plaintiff appeals.

To support her assertion that the defendants are liable for intentional infliction of emotional distress, the plaintiff has set forth the following allegations of fact. In March of 1985, the plaintiff, Kathleen Rudis, was an accredited schoolteacher employed in that capacity by the State of Illinois. At that time, the defendant, National College of Education, invited Rudis to apply as a student to its computer studies program. Rudis enrolled in the program, and after she had completed 12 hours of course work, National College invited her to apply to its master's in computer education program. In September of 1985, as requested by the National College, Rudis submitted an application, three letters of recommendation, and the results of a Miller Analogy Test. When National College responded to Rudis by postcard in January 1986, it informed her that the school had not received any letters of recommendation or the results of the Miller Analogy Test. Rudis informed the school that the documents had been provided at the time she submitted her application.

On March 7, 1986, defendant Margaret McClory phoned Rudis at the school where she worked, but in accordance with school district policy, McClory was not allowed to speak with Rudis. When Rudis returned McClory's phone call, McClory expressed extreme displeasure with the school district's telephone policy and demanded that Rudis immediately forward the one remaining letter of recommendation and the results of the Miller test needed to complete Rudis' application to

National College. Rudis informed McClory that a copy of the Miller test could be obtained from St. Joseph's College, and assured McClory that Rudis would take care of the third letter of recommendation as soon as she returned from a trip to the Mayo Clinic, where her husband was to be treated for acoustic neuroma. McClory stressed the importance of the documents and told Rudis "she had better get them done or else." When Rudis returned from the Mayo Clinic, she provided National College with the necessary letter of recommendation. The letter's author makes note in the letter that this was the second time he had forwarded a letter on behalf of Rudis to National College. On April 18, 1986, McClory informed Rudis that National College had received a copy of the Miller test and although the results were not forwarded as was usual on a 3 x 5 card, National College was accepting the results, and consequently, Rudis' application to the master's program.

On August 7, 1986, after Rudis had completed six quarters of study at the school, with a grade average of 3.84, McClory informed Rudis that she was being dropped from the program for reasons to be discussed at a conference scheduled for August 21, 1986. Attending the conference were defendants Margaret McClory, Sandra Turner, and Darrell Bloom, and plaintiff Kathleen Rudis. At the conference, the defendants informed Rudis that she was being dropped from the program for the following reasons: Rudis was smart; no one had ever achieved such high scores on the Miller Analogy Test; Rudis was responsible for a lot of "hanky panky," including grade fixing and computer hacking; Rudis had illegally obtained stationery from National College of Education, Psychological Corporation, and St. Joseph's College, and used the stationery for illegal purposes involving the mail, thereby committing a Federal crime. At the conference, Rudis was denied the opportunity to review her personal file.

Following her dismissal from the National College of Education, Rudis sought legal assistance and achieved reinstatement to the college. She completed the required course work and received a degree of master of education in June of 1987. During the time Rudis was completing her course work, three named members of the faculty called her a cheat and a computer hacker and accused her of "not getting what she deserved." Also during this time, and up until the time she filed her amended complaint, Rudis was subject to recurring rumors at her place of employment. She attributes these rumors, that she cheated and did other wrongful acts in obtaining her degree, to the defendants. As a result of these rumors, Rudis has been denied expected promotions and advancements from her employer, Worth

School District No. 127.

Rudis maintains that the defendants knew that the course of conduct outlined above would cause her severe emotional distress, and that their conduct did in fact cause her mental trauma and strain, nightmares, public indignities, nervous disorders and mental anguish. The trial court, based on the defendants' section 2—615 motion to dismiss for failure to state a cause of action for intentional infliction of emotional distress, dismissed count II of Rudis' complaint. Rudis appeals from the order of dismissal.

 To sufficiently plead a cause of action for intentional infliction of emotional distress, the plaintiff must allege facts which establish that the conduct of the defendant was extreme and outrageous. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765.) The court may find that the conduct is extreme and outrageous because (1) the character of the conduct itself is extreme and outrageous, (2) the conduct arises out of an abuse of a position or relationship in which the defendant has authority over the plaintiff, or (3) the defendant knew of some peculiar susceptibility of the plaintiff's to emotional distress. (See *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767; Restatement (Second) of Torts §46 (1965).) In the present case, Rudis has alleged that the defendants' conduct was extreme and outrageous for all three reasons. Accepting all of Rudis' well-pleaded allegations as true, we do not believe that Rudis has successfully stated a cause of action for intentional infliction of emotional distress.

 The conduct that Rudis attributes to the defendants was not in itself extreme and outrageous. The Illinois Supreme Court has determined that extreme and outrageous conduct is that which is so extreme in degree that it goes beyond all bounds of decency. (*Public Finance*, 66 Ill. 2d at 90, 360 N.E.2d at 767, citing Restatement (Second) of Torts §46, comment *d*, at 72-73 (1965).) In *Public Finance*, the plaintiff alleged, among other things, that a finance company's employees called the plaintiff and visited her home several times weekly over a seven-month period, called the plaintiff at her daughter's hospital bed despite the fact that they knew the daughter's condition was severe and that the plaintiff herself was sick and nervous, induced the plaintiff to write a check, promising that it would not be processed, and then informed one of the plaintiff's acquaintances that the plaintiff was writing bad checks. The supreme court, in reviewing these allegations, found that the plaintiff had failed to allege any abusive, threatening, or coercive conduct or language, and had therefore failed to state a cause of action for intentional infliction of emotional

distress.

In contrast to *Public Finance* stands *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, a supreme court case that was the first Illinois decision to recognize the tort of intentional infliction of emotional distress. (*Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591.) In *Knierim*, the court held that the defendant's threat to murder the plaintiff's husband, and the subsequent fulfillment of the threat, was conduct sufficiently extreme and outrageous to constitute a cause of action. In keeping with the *Knierim* decision, the Illinois courts have essentially restricted the tort of intentional infliction of emotional distress to those cases in which the defendant's conduct is so abusive and atrocious that it would cause severe emotional distress to a person of ordinary sensibilities. See *Witkowski v. St. Anne's Hospital of Chicago, Inc.* (1983), 113 Ill. App. 3d 745, 447 N.E.2d 1016; *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 521.

To buttress her argument that the defendants' conduct was extreme and outrageous, Rudis quotes expansively from the case of *Bureau of Credit Control v. Scott* (1976), 36 Ill. App. 3d 1006, 345 N.E.2d 37, a decision in which the Illinois Appellate Court held that the plaintiff had sufficiently stated a cause of action for intentional infliction of emotional distress. In *Bureau*, the defendant, like the defendant in *Public Finance*, was a collection agency. The plaintiff in *Bureau* alleged that the defendant's collection tactics included telephoning her at least 15 times, criticizing her moral character, shouting at her, calling her a deadbeat and threatening her with court action. The defendant also placed calls to the plaintiff's place of employment and phoned each of the plaintiff's parents about the debt.

We believe the intensity and duration of the *Bureau* defendant's abuse distinguishes that case from both *Public Finance* and the case before us. Even if we were persuaded, however, that the *Bureau* plaintiff and Rudis are similarly situated, we agree with the defendant in this case that Rudis' reliance on *Bureau*, a case decided prior to the supreme court's ruling in *Public Finance*, is tenuous.

■ The bases of Rudis' argument are the statements and conduct of the defendants at the August 21 meeting, the remarks defendant McClory made to Rudis when McClory phoned Rudis at Worth school, and the remarks National College personnel made to and about Rudis up until the time she filed this suit. Rudis has not alleged that the defendants used vituperative, profane, threatening, or coercive language or conduct. While the defendants' remarks may have been insulting, or untrue, we do not believe that they rise to a level of inten-

sity or duration that no reasonable man could be expected to endure. (See *Public Finance*, 66 Ill. 2d 85, 360 N.E.2d 765; *Witkowski v. St. Anne's Hospital of Chicago, Inc.*, 113 Ill. App. 3d 745, 447 N.E.2d 1016.) For these reasons, we do not believe that Rudis has successfully alleged that the defendants' conduct was of itself extreme and outrageous.

■ Rudis' further argument is that the extreme and outrageous character of the conduct arises from an abuse of the defendants' position of actual or apparent authority over Rudis. In support of this argument, Rudis cites to the Illinois Supreme Court case of *McGrath v. Fahey* (1988), 126 Ill. 2d 78, 533 N.E.2d 806. In *McGrath*, however, as in the other cases in which the plaintiffs have successfully argued the abuse of position issue, the defendants threatened to exercise their power to coerce the plaintiffs into doing something they otherwise would not do. See also *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829.

In the present case, Rudis has not alleged that the defendants used their positions as school administrators to coerce her into doing something she would otherwise not do. Rudis' dismissal from the National College program was a foregone conclusion at the time of the August 21 meeting. The defendants did not use expulsion as a threat against Rudis; rather, they explained to her, albeit perhaps in rude and insulting terms, the reasons for her dismissal. Even if we were to accept Rudis' argument that the defendants wielded some position of authority over her, such authority does not transform conduct which otherwise amounts to no more than insults or indignities into extreme and outrageous conduct. See *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591.

Further, we are not persuaded by Rudis' argument that her situation is analogous to that of the young girl given as an example in the Restatement of Torts to illustrate the abuse of position issue. The young student in the Restatement example was called into the principal's office, accused of amoral conduct with men, bullied for an hour, and threatened with prison and public disgrace for herself and her parents if she did not confess. (See Restatement (Second) of Torts §46, comment *e*, at 74 (1965).) Rudis is not a young school girl, but a mature career woman, and she was neither bullied nor threatened with prison or public disgrace. More than a student-teacher relationship is needed to square the Restatement example with the circumstances of the present case. For these reasons, we do not believe that Rudis has successfully alleged that the defendants wielded some position of actual or apparent authority over her through which there

arose extreme and outrageous conduct.

■■ Finally, Rudis argues that the defendants' conduct should be deemed outrageous because they knew of her peculiar susceptibility to emotional distress. In *Public Finance*, the court acknowledged that a peculiar susceptibility to distress of which the defendant is aware is a significant factor in determining whether the defendant's conduct was extreme and outrageous. The court in *Public Finance*, however, also stated that even under such circumstances, major outrage is still essential to the tort.

In the present case, it is not clear what it is that Rudis is alleging makes her peculiarly susceptible to distress. In arguing the issue of peculiar susceptibility, she variously refers to herself as a "gentle lady," or "teacher of our children," but offers no illumination as to why these classifications render her particularly sensitive to distress. Furthermore, Rudis did not claim either of these standings in the pleadings. Rudis does allege in the pleadings that she informed defendant McClory that Rudis was to accompany her husband to the Mayo Clinic, where he was to be treated for acoustic neuroma. Rudis does not allege, however, that her husband's condition affected her in any way. Even if we accept that Rudis meant to allege that because of her husband's condition she, herself, was ill, we do not believe that she has successfully stated a cause of action. As the court in *Public Finance* noted, peculiar susceptibility unaccompanied by major outrage cannot of itself raise the defendants' conduct to the level of extreme and outrageous. Because Rudis has failed to successfully allege that the defendants' conduct was extreme and outrageous, we uphold the finding of the trial court that Rudis failed to state a cause of action for intentional infliction of emotional distress.

The judgment of the trial court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.