ELIZABETH BELL ET AL. *v.* BOARD OF EDUCATION
OF THE CITY OF WEST HAVEN ET AL.
(AC 18207)

Lavery, Landau and Spear, Js.

Argued March 23—officially released October 26, 1999

*John R. Williams*, for the appellants (plaintiffs).

*Floyd J. Dugas*, for the appellees (defendants).

*Patrice McCarthy* and *Joan Libby* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

*Opinion*

LANDAU, J. The plaintiffs[1] appeal from the judgment of the trial court rendered following the granting of the defendants'[2] motion to strike the nine counts of the plaintiffs' complaint. The sole issue in this appeal is whether the court improperly granted the motion to strike. We affirm the judgment of the trial court in part and reverse it in part.

The complaint alleges educational malpractice,[3] negligence and intentional infliction of emotional distress. Specifically, counts one through three allege educational malpractice, counts four through six allege negligence, and counts seven through nine allege intentional infliction of emotional distress.[4] In their motion to

[1] The plaintiffs are Elizabeth Bell, who brought this action on behalf of her minor children, Stephanie Bell and Kristin Bell; Barbara Murphy-Finneran, who brought this action on behalf of her minor children, Jennifer Finneran, Kelly Finneran and Erin Finneran; and Paula Brown, who brought this action on behalf of her minor children, Elisa Brown, Kevin Brown, Timothy Brown and Daniel Brown.

[2] The defendants are the board of education of the city of West Haven and Ellen Fenty-Morrison, the principal of the Alma E. Pagels School.

[3] "In educational malpractice cases, a plaintiff sues his or her academic institution for *tortiously* failing to provide adequate educational services; see, e.g., *Peter W.* v. *San Francisco Unified School District*, 60 Cal. App. 3d 814, 131 Cal. Rptr. 854 (1976); or for *tortiously* failing to diagnose educational impediments. See, e.g., *Hoffman* v. *Board of Education*, 49 N.Y.2d 121, 400 N.E.2d 317, 424 N.Y.S.2d 376 (1979); see generally, D. Morgan, 'Liability for Medical Education,' 8 J. Legal Med. 305, 307–15 (1987)." (Emphasis in original.) *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 591 n.15, 687 A.2d 111 (1996).

[4] The complaint originally contained counts ten through twelve, which pertained to equal protection claims brought pursuant to 42 U.S.C. § 1983. On the basis of these claims, the defendants removed the case to federal court. Thereafter, the defendants moved to dismiss all counts of the complaint. The federal court granted the defendants' motion to dismiss the

strike, the defendants argued that the first six counts of the complaint fail to set forth a legally cognizable cause of action. Specifically, the defendants argued that the first six counts concerning negligence[5] and educational malpractice essentially state a claim for educational malpractice, a claim our Supreme Court declined to recognize in *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 687 A.2d 111 (1996).[6] Furthermore, the defendants argued in their motion to strike that the plaintiffs, in the last three counts of their complaint, do not allege conduct that is sufficiently outrageous to survive the motion to strike, and that a mere conclusion is insufficient, as a matter of law, to set out a legally sufficient cause of action for intentional infliction of emotional distress.

For purposes of this appeal, we take as true the following facts alleged in the complaint. See *Sassone* v.

counts pertaining to the equal protection claims only and remanded the case to state court.

[5] The plaintiffs do not address the issue of whether their educational malpractice claims are distinct from their negligence claims. In their brief to this court, the plaintiffs state that "[t]he action was brought in nine counts on two legal grounds—intentional infliction of emotional distress and educational malpractice." Furthermore, their appeal fails to address the action of the trial court in striking those counts addressed to the negligence claims. We decline to review whether the trial court improperly granted the motion to strike as to the negligence counts, as it is deemed to be abandoned. See *Nazarko* v. *Conservation Commission*, 50 Conn. App. 548, 550 n.2, 717 A.2d 850, cert. denied, 247 Conn. 940, 723 A.2d 318 (1998).

[6] The vast majority of courts to consider this issue have refused to recognize a cause of action for educational malpractice. See, e.g., *Smith* v. *Alameda County Social Services Agency*, 90 Cal. App. 3d 929, 941–42, 153 Cal. Rptr. 712 (1979); *Peter W.* v. *San Francisco Unified School District*, 60 Cal. App. 3d 814, 825, 131 Cal. Rptr. 854 (1976); *Hunter* v. *Board of Education*, 292 Md. 481, 489–90, 439 A.2d 582 (1982); *Hoffman* v. *Board of Education*, 49 N.Y.2d 121, 125, 400 N.E.2d 317, 424 N.Y.S.2d 376 (1979); *Donohue* v. *Copiague Union Free School District*, 47 N.Y.2d 440, 444–45, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979); but see *B.M.* v. *State*, 200 Mont. 58, 63, 649 P.2d 425 (1982), on appeal after remand sub nom. *B.M. by Berger* v. *State*, 215 Mont. 175, 698 P.2d 399 (1985) (court found duty of care owed to special education students under Montana constitution).

*Lepore*, 226 Conn. 773, 780, 629 A.2d 357 (1993). During the school years of September, 1994, through June, 1995, and September, 1995, through June, 1996, the defendant board of education of the city of West Haven budgeted funds for curriculum development, but expended those funds for other purposes and had no standardized curriculum for elementary schools. During that time, the defendant Ellen Fenty-Morrison was the principal at the Alma E. Pagels School (Pagels School) and the instructional leader there. As such, Fenty-Morrison set and controlled the educational policies at the school and imposed on the children a teaching method (responsive classroom method) that the Northeast Foundation for Children, which also employs Fenty-Morrison, sold to them. This method, implemented by Fenty-Morrison, emphasizes social skills at the expense of discipline and academics. Fenty-Morrison has stated publicly that she "does not believe in rewarding academic excellence," and she imposed this philosophy at the school during the 1994 through 1996 school years.

The plaintiffs further allege that during those school years, the Pagels School was the only public school in West Haven subjected to the entire responsive classroom method. Furthermore, during these school years, the defendants encouraged, created and tolerated an atmosphere of chaos, disruptiveness and violence at the school so that the children were exposed on a daily basis to so much physical and verbal violence that it became a place of fear. As such, learning at the school could not and did not take place in any meaningful sense. As a result, the plaintiffs' minor children were deprived of an education comparable to that available to other children of their age attending different elementary schools in West Haven and elsewhere in Connecticut.

"The standard of review for granting a motion to strike is well settled. In an appeal from a judgment following the granting of a motion to strike, we must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Sassone* v. *Lepore*, [supra, 226 Conn. 780]; *Michaud* v. *Wawruck*, 209 Conn. 407, 408, 551 A.2d 738 (1988). *Waters* v. *Autuori*, 236 Conn. 820, 822, 676 A.2d 357 (1996). A motion to strike admits all facts well pleaded. See Practice Book § [10-39]. A determination regarding the legal sufficiency of a claim is, therefore, a conclusion of law, not a finding of fact. Accordingly, our review is plenary. *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997). *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 68, 700 A.2d 655 (1997). If facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997). Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. *Clohessy* v. *Bachelor*, 237 Conn. 31, 33 n.4, 675 A.2d 852 (1996). . . . *Knight* v. *F. L. Roberts & Co.*, 241 Conn. 466, 470–71, 696 A.2d 1249 (1997). . . . *Pamela B.* v. *Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998)." (Internal quotation marks omitted.) *Emerick* v. *Kuhn*, 52 Conn. App. 724, 728–29, 737 A.2d 456, cert. denied, 249 Conn. 929, 738 A.2d 653 (1999).

I

The plaintiffs first assert that the trial court improperly granted the motion to strike as to their educational malpractice claim.[7] We disagree.

[7] The phrase educational malpractice is a recent expansion of traditional tort law. The expression has been used to describe different causes of action, namely, failure to counsel and educate students adequately, in terms of needs and achievement; see, e.g., *Peter W.* v. *San Francisco Unified School*

The plaintiffs argued in opposition to the defendants' motion to strike the counts of the complaint alleging educational malpractice that because our Supreme Court in *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 574, recognized certain exceptional circumstances in which it would entertain such causes of action, that court did not apply the jurisprudential reservations about requiring courts to make determinations of educational reasonableness, which the defendants claimed militated against recognizing a cause of action for educational malpractice. The plaintiffs argued (1) that the reservations constituted dicta only and (2) that, because the *Gupta* court indicated that there were two exceptional situations in which it would entertain such litigation, it would be inappropriate to strike their educational malpractice claims at this early stage. The trial court rejected those arguments and granted the defendants' motion to strike.

In *Gupta*, our Supreme Court joined the vast majority of states that have rejected educational malpractice

*District*, 60 Cal. App. 3d 814, 131 Cal. Rptr. 854 (1976); *Wickstrom* v. *North Idaho College*, 111 Idaho 450, 725 P.2d 155 (1986); *Donohue* v. *Copiague Union Free School District*, 47 N.Y.2d 440, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979); *Aubrey* v. *School District of Philadelphia*, 63 Pa. Commw. 330, 437 A.2d 1306 (1981); and failure to make proper evaluations (testing and classifying and placement of students in suitable programs and facilities). See, e.g., *Daniel B.* v. *Wisconsin Dept. of Public Instruction*, 581 F. Sup. 585 (E.D. Wis. 1984), aff'd, 776 F.2d 1051 (7th Cir. 1985), cert. denied, 475 U.S. 1083, 106 S. Ct. 1462, 89 L. Ed. 2d 719 (1986); *D.S.W.* v. *Fairbanks North Star Borough School District*, 628 P.2d 554 (Alaska 1981); *Brantley* v. *District of Columbia*, 640 A.2d 181 (D.C. 1994); *Tubell* v. *Dade County Public Schools*, 419 So. 2d 388 (Fla. App. 1982); *Hunter* v. *Board of Education*, 292 Md. 481, 439 A.2d 582 (1982); *Hoffman* v. *Board of Education*, 49 N.Y.2d 121, 400 N.E.2d 317, 424 N.Y.S.2d 376 (1979); *Snow* v. *New York*, 98 App. Div. 2d 442, 469 N.Y.S.2d 959 (1983), aff'd, 64 N.Y.2d 745, 475 N.E.2d 454, 485 N.Y.S.2d 987 (1984); see generally note, *"Hunter* v. *Board of Education & Doe* v. *Board of Education*—No Cause of Action for Educational Malpractice Against Public School Teachers and Psychologists," 42 Md. L. Rev. 582, 583–85 (1983) (discussing two categories of educational malpractice claims).

claims sounding in tort.[8] Specifically, the court noted, albeit in dicta, that a claim for educational malpractice "raise[s] questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students—questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts. *Cencor, Inc.* v. *Tolman*, 868 P.2d 396, 399 (Colo. 1994) (en banc). Because these tort principles are difficult, if not impossible, to apply in the academic environment, courts have almost universally held that claims of educational malpractice are not cognizable. Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached. See, e.g., *Peter W.* v. *San Francisco Unified School District*, 60 Cal. App. 3d 814, 825, 131 Cal. Rptr. 854 (1976) (finding no conceivable workability of a rule of care against which [teachers'] alleged conduct may be measured). In entertaining such claims, moreover, courts are required not merely to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies. *Donohue* v. *Copiague Union Free School District*, [47 N.Y.2d 440, 445, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979)]." (Internal quotation marks omitted.) *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 590–91.[9]

---

[8] See footnote 6.

[9] With respect to the public policy concerns, the court in *Peter W.* v. *San Francisco Unified School District*, supra, 60 Cal. App. 3d 825, stated: "Few of our institutions, if any, have aroused the controversies, or incurred the public dissatisfaction, which have attended the operation of the public schools during the last few decades. Rightly or wrongly, but widely, they are charged with outright failure in the achievement of their educational objectives; according to some critics, they bear responsibility for many of the social and moral problems of our society at large. Their public plight in these respects is attested in the daily media, in bitter governing board elections, in wholesale rejections of school bond proposals, and in survey

The *Gupta* court stated that the "jurisprudential considerations that shed doubt on the viability of the tort of educational malpractice also inform our analysis of a *contract* claim based on inadequate educational services." (Emphasis in original.) Id., 591. The court noted, however, that a cause of action for institutional *breach of contract* for educational services exists in at least two situations. Id., 592. "The first would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. See *Wickstrom* v. *North Idaho College*, 111 Idaho 450, 452, 725 P.2d 155 (1986); *Ross* v. *Creighton University*, [957 F.2d 410, 417 (7th Cir. 1992)]. The second would arise if the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program. See, e.g., *Cencor, Inc.* v. *Tolman*, supra, 868 P.2d 399; *Paladino* v. *Adelphi University*, [89 App. Div. 2d 85, 92, 454 N.Y.S.2d 868 (1982)]." *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 592–93.

upon survey. To hold them to an actionable duty of care, in the discharge of their academic functions, would expose them to the tort claims—real or imagined—of disaffected students and parents in countless numbers. They are already beset by social and financial problems which have gone to major litigation, but for which no permanent solution has yet appeared. . . . The ultimate consequences, in terms of public time and money, would burden them—and society—beyond calculation." (Citations omitted; internal quotation marks omitted.)

In *Donohue* v. *Copiague Union Free School District*, supra, 47 N.Y.2d 444, the New York Court of Appeals noted that a complaint alleging educational malpractice might, on the pleadings, state a cause of action under traditional notions of tort law. The court further noted, however, that, as a matter of public policy, courts should not entertain such claims because that would interfere with the responsibility for the administration of a public school system in school administrative agencies. Id. Our review of the record in the present matter does not indicate that the plaintiffs have availed themselves of the opportunity to consult the administrative agencies. The court also noted that it did not discount the possibility that there could be "gross violations of defined public policy which the courts would be obliged to recognize and correct." (Internal quotation marks omitted.) Id., 445.

The plaintiffs argue that the allegations of this case fit within the first exception. The plaintiffs, however, incorrectly interpret *Gupta*. In *Gupta* v. *New Britain General Hospital,* supra, 239 Conn. 590–91, our Supreme Court joined the vast majority of other states that have rejected the tort of educational malpractice. See footnote 6. The court did not recognize any exceptions in the context of the tort of educational malpractice, but instead clearly articulated that the two narrow exceptions that it set forth applied in the *breach of contract* context. In the present matter, the plaintiffs' claim for educational malpractice sounds in tort, not breach of contract. As such, contrary to the plaintiffs' assertions, the first exception enunciated by the *Gupta* court is inapplicable.

On the basis of clear language in *Gupta,* we decline the subtle invitation to extend the two exceptions to tort-based claims for educational malpractice. We conclude, therefore, that under the facts of this case, the plaintiffs' claim of educational malpractice does not survive the defendants' motion to strike.

II

The plaintiffs also claim that counts seven, eight and nine of the complaint allege facts constituting an action for intentional infliction of emotional distress sufficient to survive a motion to strike. Specifically, the plaintiffs assert that the complaint does more than merely conclude that the defendants' conduct was extreme and outrageous. The plaintiffs maintain that facts supporting their claim are detailed in counts one through three and incorporated by reference into counts seven through nine. We agree.

In counts seven through nine, the plaintiffs repleaded the factual allegations recited in the prior counts. They further allege in each count that "[t]he actions of the defendants . . . were extreme and outrageous and

were carried out by the defendants with the knowledge that such actions would, or probably would, cause the plaintiffs' minor children to suffer extreme emotional distress." The plaintiffs also incorporate by reference the allegation that the defendants "encouraged, created and tolerated an atmosphere of chaos, disruptiveness and violence"; that the children "were exposed on a daily basis to . . . physical and verbal violence"; and that the school became a "place of fear [where] learning could not and did not take place in any meaningful sense."

"[F]or the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Hiers* v. *Cohen,* 31 Conn. Sup. 305, 329 A.2d 609 (1973); 1 Restatement (Second), Torts § 46. *Petyan* v. *Ellis,* [200 Conn. 243, 253, 510 A.2d 1337 (1986)], quoting *Murray* v. *Bridgeport Hospital,* 40 Conn. Sup. 56, 62, 480 A.2d 610 (1984). Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. *Petyan* v. *Ellis,* supra, 254 n.5, quoting W. Prosser & W. Keeton, Torts (5th Ed.) § 12, p. 60. Thus, [i]t is the intent to cause injury that is the gravamen of the tort; *Hustler Magazine, Inc.* v. *Falwell,* 485 U.S. 46, 53, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988) . . . ." (Internal quotation marks omitted.) *DeLaurentis* v. *New Haven,* 220 Conn. 225, 266–67, 597 A.2d 807 (1991).[10] "Whether

---

[10] The Restatement (Second) of Torts further describes the conduct as follows: "Liability has been found only where the conduct has been so

the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury. *Reed* v. *Signode Corporation*, 652 F. Sup. 129, 137 (D. Conn. 1986); 1 Restatement (Second), Torts § 46, comment (h) (issue of extreme and outrageous conduct) and comment (j) (issue of severe emotional distress)." *Mellaly* v. *Eastman Kodak Co.*, 42 Conn. Sup. 17, 18–19, 597 A.2d 846 (1991) (*Berdon, J.*).

The trial court found that the facts alleged in the complaint, even when construed in a light most favorable to the plaintiffs, do not describe conduct that exceeds all bounds usually tolerated by decent society. That court therefore concluded that the facts alleged, were not outrageous. We note that it has always been a relatively commonplace circumstance that some students are afraid of schoolteachers, examinations and other students. We also note that it is likely that students who experience these concerns also will suffer some degree of stress and anxiety, whether these acts are lawful and proper or wrongful and tortious in nature. To survive a motion to strike, therefore, there must be allegations that the extreme and outrageous conduct "exceed[ed] *all bounds* usually tolerated by decent society . . . ." (Emphasis in original.) *Petyan* v. *Ellis*, supra, 200 Conn. 254 n.5.

The plaintiffs in the present matter allege that the defendants affirmatively "encouraged, created and tolerated an atmosphere of *chaos, disruptiveness and violence*," (emphasis added) that their children were

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965).

exposed to *physical and verbal violence* and that the school became a *place of fear* where learning could not and did not take place.[11] The defendants concede in their brief to this court that "the plaintiffs . . . pleaded the first and fourth elements" needed to establish a prima facie case of intentional infliction of emotional distress. Our inquiry, therefore, centers on whether the plaintiffs have sufficiently pleaded the second and third elements set forth in *Petyan* v. *Ellis*, supra, 200 Conn. 253.

As to the second element, extreme and outrageous conduct, the plaintiffs allege that the defendants' actions subjected the plaintiffs' minor children to an "atmosphere of chaos, disruptiveness and violence" in which school became a "place of fear" where learning did not take place in "any meaningful sense." Furthermore, the plaintiffs allege that this conduct continued for *two years*. The plaintiffs also allege that the Pagels School was the only public school in West Haven subjected to the entirety of the responsive classroom method, a method sold to them by Northeast Foundation for Children, the Massachusetts corporation that also employs Fenty-Morrison. Within the context that Fenty-Morrison implemented a method created by the company that employed her, knew of the chaos, disruptiveness and violence that continued over a two year period and caused the plaintiffs' minor children distress, a trier of fact could find that this constitutes outrageous conduct on the defendants' part.

As to the third element, the defendants argue that "the plaintiffs failed to allege the causation element altogether" and, moreover, that there is no " 'peculiar

---

[11] To protect themselves against broad based allegations, the defendants could have filed a request to revise pursuant to Practice Book § 10-35, formerly § 147, to compel the plaintiffs to amend the complaint to provide "a more complete or particular statement of the allegations . . . ." Our review of the record indicates that the defendants failed to do this.

sensitivity' which was intentionally exploited and designed to cause severe and emotional distress." The plaintiffs, however, incorporate by reference the allegation that "[a]s a proximate cause of the acts and omissions of the defendants herein described, the plaintiffs' minor children . . . suffered extreme emotional distress." It is impossible to conceive that children would not be peculiarly susceptible to violence, especially under the alleged facts of this case. We can think of no reason why our society could or should countenance or suffer this type of conduct in a place of learning. We conclude that the extremely broad allegations contained in counts seven, eight and nine of the plaintiffs' complaint, not addressed by any request to revise filed by the defendants, were sufficient to establish a cause of action sounding in intentional infliction of emotional distress, which should not have been stricken from the complaint.

The judgment is reversed only with respect to the intentional infliction of emotional distress counts and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.