******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JOHN STRANO ET AL. *v.* DARWYN AZZINARO ET AL.
(AC 40752)

Sheldon, Elgo and Beach, Js.

*Syllabus*

The plaintiff J, individually and as parent and next friend of his minor son, the plaintiff R, sought to recover damages from the defendants for intentional infliction of emotional distress. The plaintiffs alleged that R, who was a member of a certain Boy Scouts troop, had been bullied by a fellow member of the troop. After J requested that the defendant A, the committee chairman of the troop, and other leaders intervene in an effort to stop the bullying, J attended troop meetings to monitor his son's treatment. Subsequently, A sent J a letter notifying him that R was no longer permitted to attend troop meetings or events because J's presence at troop meetings disrupted the group's functioning. The plaintiffs thereafter brought this action, alleging, inter alia, that the defendants punished R for the actions of his father in order to cause J pain and injury, and, as a result of the conduct of the defendants in expelling R for an allegedly false reason, both of the plaintiffs suffered extreme emotional distress. Following the trial court's granting of a motion to strike the complaint for failure to plead sufficient facts to establish that the defendants had engaged in extreme and outrageous conduct, the plaintiffs filed a revised complaint, in which they pleaded additional facts, including that R had been diagnosed with autism spectrum disorder and that the defendants were aware that R required educational accommodations, and in which they described several instances where R had been bullied by the fellow troop member. Subsequently, the trial court granted the defendants' motion to strike the revised complaint on the ground that it failed to plead facts sufficient to allege that the defendants had engaged in extreme and outrageous conduct. Thereafter, the plaintiffs did not file a timely new pleading and the trial court granted the defendants' motion for judgment. On the plaintiffs' appeal to this court, *held* that the trial court did not err in granting the defendants' motion to strike the plaintiffs' revised complaint, the plaintiffs having failed to allege facts sufficient to support the conclusion that the defendants engaged in extreme and outrageous conduct toward them: J's claim that the defendants inflicted emotional distress on him by expelling R and that R's expulsion was effected for the purpose of inflicting distress on J was unavailing, as the conduct of the defendants, even if hurtful, did not exceed all bounds of decency in civilized society, and although this court was mindful of R's alleged vulnerability and recognized that troop participation may have been a valuable opportunity for R to interact positively with others, and that being terminated from participation in that activity may have caused him distress, and although efforts by the defendants allegedly were inadequate to end the bullying, the defendants' alleged conduct toward R was not extreme and outrageous, beyond all bounds of civilized behavior, as it was not alleged that R was expelled because he was autistic, nor was it alleged that the defendants promoted bullying and R suffered distress as a result, the mechanics of the expulsion were not alleged to be abusive or degrading, and, thus, under these circumstances, the expulsion in itself was not sufficient to constitute extreme and outrageous conduct for purposes of sounding in intentional infliction of emotional distress; moreover, the manner in which R was expelled did not rise to the level of intentional infliction of emotional distress, as the revised complaint did not allege that the defendants used any harsh or humiliating language in the letter or at any time, and even if the defendants' given reason for the expulsion was untrue, the scenario did not exceed the bounds of civilized behavior.

Argued October 17, 2018—officially released March 5, 2019

*Procedural History*

Action to recover damages for intentional infliction of emotional distress, brought to the Superior Court

in the judicial district of Middlesex, where the court, *Domnarski, J.*, granted the defendants' motion to strike the plaintiffs' revised complaint; thereafter, the court granted the defendants' motion for judgment and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*John R. Williams*, for the appellants (plaintiffs).

*Stephen P. Brown*, with whom, on the brief, was *Nicole R. Cuglietto*, for the appellees (defendants).

*Opinion*

BEACH, J. The plaintiffs, John Strano and Rider Strano, appeal from the judgment of the trial court rendered after its decision striking their claims sounding in intentional infliction of emotional distress, which claims were brought against the defendants, Darwyn Azzinaro, in his official capacity as Essex Boy Scouts Troop 12 Committee Chairman, and the Boy Scouts of America Corporation. The plaintiffs claim that their revised complaint alleged facts sufficient to support the conclusion that the defendants engaged in extreme and outrageous conduct toward them. We affirm the judgment of the trial court.[1]

The following facts and procedural history are pertinent to our decision. The original complaint was brought by John Strano on his own behalf and as the father and next friend of his minor son. The plaintiffs alleged, in relevant part, that the minor plaintiff, a scout in the Essex Boy Scouts Troop 12, had been bullied by a fellow scout. After John Strano requested that Azzinaro and other adult troop leaders intervene to stop the bullying and John Strano attended troop meetings to monitor his son's treatment, Azzinaro sent John Strano a letter notifying him that the minor plaintiff was no longer permitted to attend troop meetings or events, because John Strano's presence at troop meetings disrupted the group's functioning.[2]

The defendants filed a motion to strike the complaint on the ground that the plaintiffs failed to allege facts sufficient to establish that the defendants had engaged in extreme and outrageous conduct. The court granted the motion to strike, concluding that no reasonable fact finder could find that the defendants' conduct was extreme and outrageous.

The plaintiffs filed a revised complaint, in which they pleaded additional facts in support of their claim of intentional infliction of emotional distress. The revised complaint added that the minor plaintiff had been diagnosed with autism spectrum disorder, which diagnosis qualified him for an Individual Education Plan pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq., and that the defendants were aware that the minor plaintiff required educational accommodations. The revised complaint also described several instances in which a fellow scout had bullied the minor plaintiff, as well as remedial actions that the alleged bully's parents and the defendants had taken in response to the bullying.

The defendants filed a motion to strike the plaintiffs' revised complaint on the ground that it, like the original complaint, failed to plead facts sufficient to allege that the defendants had engaged in extreme and outrageous conduct toward them. The court granted the defendants' motion. The plaintiffs did not file a new pleading

within the time allotted in Practice Book § 10-44. The defendants filed a motion for judgment, which the court granted. This appeal followed.

The plaintiffs claim that the court erroneously determined that no reasonable fact finder could find that the defendants' alleged conduct had been extreme and outrageous and, therefore, erred in striking their revised complaint. We disagree.

"The standard of review for granting a motion to strike is well settled. In an appeal from a judgment following the granting of a motion to strike, we must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . A motion to strike admits all facts well pleaded. . . . A determination regarding the legal sufficiency of a claim is, therefore, a conclusion of law, not a finding of fact. Accordingly, our review is plenary. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citations omitted; internal quotation marks omitted.) *Bell* v. *Board of Education*, 55 Conn. App. 400, 404, 739 A.2d 321 (1999).

To prevail on a claim sounding in intentional infliction of emotional distress, a plaintiff must prove the following four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Id., 409, citing, inter alia, 1 Restatement (Second), Torts § 46 (1965). "In assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeper function. In this capacity, the role of the court is to determine whether the allegations of a complaint . . . set forth behaviors that a reasonable fact finder could find to be extreme or outrageous. In exercising this responsibility the court is not [fact-finding], but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." (Internal quotation marks omitted.) *Historic District Commission* v. *Sciame*, 140 Conn. App. 209, 218, 58 A.3d 354 (2013).

"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) *Bell* v. *Board of Education*, supra, 55 Conn. App. 409. "Generally, the case is one in which the recita-

tion of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 211, 757 A.2d 1059 (2000), quoting 1 Restatement (Second), supra, § 46, comment (d).

"[E]ven if emotional harm is inflicted for no purpose other than to cause such harm, some degree of emotional harm must be expected in social interaction and tolerated without legal recourse. Under the 'extreme and outrageous' requirement, an actor is liable only if the conduct goes beyond the bounds of human decency such that it would be regarded as intolerable in a civilized community. Ordinary insults and indignities are not enough for liability to be imposed, even if the actor desires to cause emotional harm." 2 Restatement (Third), Torts § 46, comment (d), pp. 138–39 (2012).

In *Bell* v. *Board of Education*, supra, 55 Conn. App. 400, the parents of several children alleged that the principal of their elementary school "imposed on the children a teaching method . . . [which emphasized] social skills at the expense of discipline and academics. . . [and, consequently,] the defendants encouraged, created and tolerated an atmosphere of chaos, disruptiveness and violence at the school so that the children were exposed on a daily basis to so much physical and verbal violence that it became a place of fear." Id., 403. Emphasizing that the "place of fear" lasted for two years, this court concluded that the allegations were sufficient to state a cause of action for intentional infliction of emotional distress. Id., 411.

In *Appleton* v. *Board of Education*, supra, 254 Conn. 205, and *Dollard* v. *Board of Education*, 63 Conn. App. 550, 777 A.2d 714 (2001), on the other hand, offensive and insulting behavior was alleged but the allegations were not found sufficient to support a conclusion of intentional infliction of emotional distress. In *Appleton*,[3] the plaintiff teacher was allegedly insulted in front of her colleagues. The defendants allegedly questioned her vision and her ability to read, her daughter was told that the plaintiff had been "acting differently" and should take a few days off, she was subjected to two psychiatric examinations, and police were called to escort her from work. *Appleton* v. *Board of Education*, supra, 211. Although the events "may very well have been distressing and hurtful to the plaintiff," they were held not to constitute "extreme and outrageous" conduct. Id.

In *Dollard* v. *Board of Education*, supra, 63 Conn. App. 550, the complaint alleged that the plaintiff school psychologist had been subjected to a concerted plan to compel her to resign from her position and to make her distraught. Allegedly, she was transferred against her wishes and her replacement was secretly hired. Id., 552–53. She was publicly admonished for chewing gum,

being habitually late and disorganized and not using time well, and she was unnecessarily placed under the close supervision of a friend of a defendant. Id., 553. This court deemed these allegations insufficient to establish extreme and outrageous conduct. Id., 555.

I

We first apply the foregoing principles to the allegations specifically regarding John Strano. The plaintiffs alleged that John Strano asked the defendants to intervene to protect the minor plaintiff from bullying. Subsequently, Azzinaro sent a letter to John Strano expelling the minor plaintiff from the troop. Azzinaro allegedly stated that John Strano's presence "at troop meetings [was] a major disruption to the other scouts, scout parents, Rider and leaders of the troop." The plaintiffs alleged that this statement was false and that the defendants punished the minor plaintiff "for the purpose of causing pain and injury to John Strano."

He alleged, in essence, that the defendants inflicted emotional distress on him by expelling his son, and that the expulsion was effected for the purpose of inflicting distress on John Strano. This conduct is not different in kind or degree from that alleged in cases such as *Appleton* v. *Board of Education*, supra, 254 Conn. 205, and *Dollard* v. *Board of Education*, supra, 63 Conn. App. 550. Even if hurtful, the conduct did not exceed all bounds of decency in civilized society. We, therefore, affirm the trial court's judgment as to John Strano.

II

Our analysis of the minor plaintiff's claim is modified by two factors that do not apply to the claim of John Strano. The Restatement provides that conduct may be deemed extreme and outrageous if the actor knew that "the other person was especially vulnerable." 2 Restatement (Third), supra, § 46, comment (d). The Restatement also provides: "Whether an actor's conduct is extreme and outrageous depends on the facts of each case, including the relationship of the parties, [and] whether the actor abused a position of authority over the other person . . . ." Id., comment (d).

The complaint alleged facts sufficient to trigger consideration of the additional factors. The plaintiffs alleged that the minor plaintiff exhibited neuroatypical behaviors associated with his autism spectrum diagnosis, and that the defendants knew that the minor plaintiff required speech and language services at school to address deficits in social skills and executive functioning. They further alleged several instances in which the minor plaintiff was bullied by a fellow scout while participating in troop activities. Although the defendants notified the other scout's parents of these instances and suspended the fellow scout from meetings for four weeks, they refused to take any further— and, impliedly, more harsh—disciplinary action against

the bully. The revised complaint asserts, as well, that the defendants had a duty to protect troop members from bullying and sets forth facts sufficient to conclude that the defendants were in a position of authority over the minor plaintiff. Thus, vulnerability on the part of the minor plaintiff and the position of authority on the part of the defendants were alleged.

The allegation of additional factors, however, does not necessarily compel the conclusion that the element of extreme and outrageous conduct has been adequately alleged. There remains the dispositive question as to whether under the circumstances, which include vulnerability and the exercise of authority, the alleged conduct was extreme and outrageous, as defined and illustrated in case law. We turn, then, to illustrative cases.

In *Karlen* v. *Westport Board of Education*, Docket No. 3:07-CV-309 (CFD), 2010 WL 3925961 (D. Conn. September 30, 2010), the plaintiff alleged that the defendant failed to act to mitigate racially motivated harassment of a minor student. The court noted that in response to the plaintiff's reporting that she was the victim of racially motivated harassment, the defendant investigated her allegations, met with her parents, and promptly honored her father's request to transfer the plaintiff to another school. Id., *18. In light of such actions, the District Court, applying Connecticut law, concluded that summary judgment was appropriate because "the plaintiffs have not alleged conduct that is sufficiently 'extreme and outrageous' to constitute intentional infliction of emotional distress." Id.

It is instructive to note a qualitative difference between *Bell* and *Karlen*. In *Karlen* v. *Westport Board of Education*, supra, 2010 WL 3925961, the defendant superintendent allegedly made an effort to address the hurtful behavior complained of, though the effort may have been unproductive. In *Bell* v. *Board of Education*, supra, 55 Conn. App. 400, by contrast, the defendants *themselves* allegedly created the "place of fear" that plagued the plaintiffs for two years. Failure to remedy a difficult environment, at least where some effort is made to do so, is rarely, if ever, the kind of behavior that exceeds the bounds of civil decency for the purpose of proving the tort of intentional infliction of emotional distress. See also *Bass ex rel. Bass* v. *Miss Porter's School*, 738 F. Supp. 2d 307 (D. Conn. 2010) (expulsion of student for violating school code of conduct, even though she previously told staff she had been ridiculed for her attention deficit disorder, not sufficiently extreme and outrageous conduct).

Additionally, we find persuasive guidance in *Rudis* v. *National College of Education*, 548 N.E.2d 474 (Ill. App. Ct. 1989), in which the court applied the Restatement in determining whether the additional factors alleged in the plaintiff's complaint alleged facts

sufficient to support a conclusion that the defendant's conduct was extreme and outrageous. In *Rudis*, the plaintiff was employed as a schoolteacher in Illinois. The National College of Education invited her to apply as a student to their Masters in Computer Education Program. Id., 475. After enrolling in the program, the plaintiff was dismissed from the school on a number of grounds, but, after seeking legal counsel, she was reinstated. Id., 476. The plaintiff then received several comments from faculty who called her "a cheat and a computer hacker, and accused her of 'not getting what she deserved.'" Id. Rumors spread at her place of employment, and she was denied expected promotions and advancements. Id. The plaintiff claimed intentional infliction of emotional distress based on this course of conduct. Id.

The plaintiff alleged that the conduct was extreme and outrageous because "(1) the character of the conduct itself is extreme and outrageous, (2) the conduct arises out of an abuse of a position or relationship in which the defendant has authority over the plaintiff, [and] (3) the defendant knew [the plaintiff had] some peculiar susceptibility . . . to emotional distress." See id. As to the character of the defendants' conduct, the court concluded that "[the plaintiff] has not alleged that the defendants used vituperative, profane, threatening, or coercive language or conduct. While the defendants' remarks may have been insulting or untrue, we do not believe that they rise to a level of intensity or duration that no reasonable man could be expected to endure." Id., 477. Additionally, the court rejected the plaintiff's argument that the defendants abused their authority, reasoning that the defendants had not coerced the plaintiff into engaging in behavior in which she would not otherwise have engaged and did not use expulsion as a threat against her. Id., 478. Moreover, the court noted that "[e]ven if we were to accept [the plaintiff's] argument that the defendants wielded some position of authority over her, such authority does not transform conduct which otherwise amounts to no more than insults or indignities into extreme and outrageous conduct." Id. Finding no outrageous conduct, the court reasoned that the plaintiff's contention that her peculiar susceptibility could warrant a finding of extreme and outrageous conduct must also fail as "peculiar susceptibility unaccompanied by major outrage cannot of itself raise the defendants' conduct to the level of extreme and outrageous." Id. The court affirmed the trial court's judgment granting the defendant's motion to dismiss. Id.; see also *Shore* v. *Mirabello*, Docket No. 3:16-cv-2078 (VLB), 2018 WL 1582548 (D. Conn. March 29, 2018) (although plaintiff allegedly had learning disorder and allegedly had been called "'like a fifth grader,' 'not too swift,' 'slow,' and 'stupid'" by instructor, expulsion from professional training school after telling prospective students about instances in which she was criti-

cized, demeaned, and unfairly treated by instructor was not basis for intentional infliction of emotional distress claim, as such conduct did not transgress all bounds of decency).[4]

With these principles in mind, we turn to the precise allegations of the minor plaintiff. As stated previously, the revised complaint alleged that the minor plaintiff was autistic and that the defendants knew that he required speech and language services at school to address deficits in his executive ability and social skills. The revised complaint alleged that he had been bullied several times, most notably by a particular fellow scout. The defendants suspended the bully for four weeks but did not take further action against him. The defendants then expelled the minor plaintiff for the stated reason that the presence of his father, the plaintiff John Strano, at troop activities was "a major disruption to the other scouts, scout parents, [the minor plaintiff] and leaders of the troop." The stated reason was false, according to the revised complaint, as John Strano had asked the defendants to intervene to protect the minor plaintiff from bullying, and it was the defendants' obligation to do so. The revised complaint concluded by alleging that the defendants punished the minor plaintiff for the actions of his father in order to cause John Strano pain and injury, and, as a result of the conduct of the defendants, both of the plaintiffs suffered extreme emotional distress.

It is instructive to note what was not alleged. It was not alleged that the minor plaintiff was expelled because he was autistic, nor was it alleged that the defendants promoted bullying and the minor plaintiff suffered distress as a result. Nor were the mechanics of the expulsion allegedly abusive or degrading. Rather, it allegedly was the expulsion itself, for an allegedly false reason *not* based on the minor plaintiff's behavior or character, that caused him extreme emotional distress.

In these circumstances, we conclude that the expulsion in itself was not sufficient to constitute extreme and outrageous conduct for purposes of a claim sounding in intentional infliction of emotional distress. In so concluding, we are mindful of the minor plaintiff's alleged vulnerability. We recognize that troop participation may have been a valuable opportunity for the minor plaintiff to interact positively with others, and that being terminated from participation in that activity may have caused him distress. Although efforts by the defendants allegedly were inadequate to end the bullying, we are not persuaded that, in light of the previously discussed authorities, their alleged conduct toward the minor plaintiff was extreme and outrageous, beyond all bounds of civilized behavior.

Additionally, the manner in which the minor plaintiff was expelled does not rise to the level of intentional

infliction of emotional distress. The revised complaint does not allege that the defendants used any harsh or humiliating language in the letter or, for that matter, at any time. Even if the defendants' given reason for the expulsion was untrue, the scenario does not exceed the bounds of civilized behavior.

The allegations in the present case present a scenario that may well have been difficult, and the plaintiffs perhaps may have been treated unfairly. Allegedly uneven discipline and punishment for a parent's actions are a far cry from the two years of an intensely fearful environment such as was presented in *Bell* v. *Board of Education*, supra, 55 Conn. App. 400, and which the plaintiffs in *Bell* had no choice but to attend. The circumstances of this case are consistent with the scenarios in those cases that present unfortunate, but not totally uncivilized, behavior.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In their brief, the defendants claimed that the Federal Volunteer Protection Act, 42 U.S.C. § 14503 (a), barred recovery. In oral argument, the defendants noted that they did not raise this claim at the trial level because they had not yet filed an answer and defenses. Accordingly, the defendants agreed that we need not consider this claim.

[2] The revised complaint quoted only a brief portion of the letter.

[3] In *Appleton*, our Supreme Court reversed this court's conclusion that summary judgment for the defendants had been rendered improperly.

[4] Although the federal cases applying Connecticut law and the appellate case from another jurisdiction are not binding, we find them persuasive.