Marc COWRAS

v.

HARD COPY, et al.

No. 3:95CV99.

United States District Court,
D. Connecticut.

June 24, 1999.

Kathryn Emmett, Jane W. Glander, Emmett & Glander, Stamford, CT, for Marc Cowras.

William M. Bloss, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Elizabeth A. McNamara, William S. Adams, Davis Wright Tremaine, New York City, for Hard Copy, CBS, Inc., Paramount Communications , Inc. and WVIT, Inc.

John J. Kelly, Jr., Cantor, Floman, Gross, Kelly, Amendola & Sacramone, Orange, CT, Richard J. Buturla, Berchem, Moses & Devlin, P.C., Hanon W. Russell, Law Offices of Hanon W. Russell, Milford, CT, for Wilton Police Dept., Angelo Toscano, Robert Crosby and Town of Wilton.

## RULING ON MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

This action against Hard Copy, Paramount Communications, Inc. (the "media defendants"), the Town of Wilton, the Wilton Police Department, Chief of Police Angelo Toscano, and Officer Robert Crosby, arises out of the broadcast of a Hard Copy episode which featured a videotape of the plaintiff, Marc Cowras ("Cowras"), that was taken after his arrest for driving while intoxicated. There are presently five claims in this case:[1] defamation (libel per se), intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and a violation of 42 U.S.C. § 1983 against Officer Crosby based on an alleged due process violation.

Presently pending is the media defendants' motion for summary judgment on Cowras's claims of negligent and intentional infliction of emotional distress. The

media defendants also seek dismissal of Cowras's demand for punitive damages.

For the following reasons, the motion [doc. # 89] is GRANTED in part and DENIED in part.

Familiarity with the facts is presumed.

### STANDARD OF REVIEW

A motion for summary judgment may be granted if the court determines that there are no genuine issues of material fact to be tried and that the moving party is entitled to judgment as a matter of law. See Fed. R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a Rule 56 motion, the court's responsibility is not to resolve disputed issues of fact, but to assess whether there are any factual issues to be tried, while resolving all ambiguities and drawing all reasonable inferences against the moving party. See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986) (citing Anderson, 477 U.S. at 248, 106 S.Ct. 2505; Eastway Const. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir.1985)); see also Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir.1989); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The substantive law governing a particular case identifies the facts that are material. See Anderson, 477 U.S. at 258, 106 S.Ct. 2505. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.1992) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505).

Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

1. The court previously granted summary judgment on Cowras's § 1983 claims against Chief Toscano and the Town of Wilton. The court also granted summary judgment in favor of all defendants on Cowras's privacy claims. In addition, the court granted summary judgment in favor of CBS and WVIT–TV on all claims brought against them. See Cowras v. Hard Copy, No. 3:95CV99(AHN) (D.Conn. Sept. 29, 1997) (Ruling on Mot. For S.J.).

together with affidavits, if any, show that reasonable minds could not differ as to the material facts. *See Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

## DISCUSSION

The media defendants contend that the intentional infliction of emotional distress claim must fail because Cowras can not establish that their conduct was intentional or knowing or sufficiently outrageous. They also claim that he can not prove that his emotional distress was caused by their conduct rather than from embarrassment caused by his own behavior.

With respect to the negligent infliction of emotional distress claim, the media defendants maintain that their conduct was not so egregious that it posed an unreasonable risk of causing Cowras emotional distress or that it was foreseeable that any such emotional distress could cause him illness or physical injury.

Finally, the media defendants assert that Cowras's demand for punitive damages should be dismissed because the court has already found that there is no evidence that they acted with actual malice.

Before reaching the merits of the media defendants' claims, the court must, as a threshold matter, determine whether conduct which the court previously found to be protected under the First Amendment can be used by Cowras to support his emotional distress claims.

## I. Use of Constitutionally Protected Conduct

■ The media defendants maintain that the only conduct that Cowras can use in support of his emotional distress claims is the conduct that supports his defamation claim—that the media defendants falsely stated in the Hard Copy episode that Cowras brought charges of police brutality and

then dropped them after his lawyer viewed the videotape. This is so, they contend, because the court previously found that their use of the videotape as well as their identification of him by name in the Hard Copy episode, was constitutionally protected. They assert that the use of this constitutionally protected conduct to impose civil liability for emotional distress would amount to an end run around the constitutional restrictions imposed on the law of privacy and would impermissibly burden the First Amendment rights of the press. The court agrees.

The Supreme Court has held that a plaintiff may not use a claim for emotional distress "to circumvent the established and carefully balanced framework of constitutional and state libel law." *Hustler Magazine v. Falwell*, 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988); *see also Howell v. New York Post Co.*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993) (dismissing privacy claim where publication of picture was found constitutionally protected and holding that the same constitutionally protected publication could not support a claim for emotional distress). As the Seventh Circuit recognized, while today's tabloid style of investigative reporting is "often shrill, one-sided and offensive, and sometimes defamatory, . . . [it] is entitled to all the safeguards with which the Supreme Court has surrounded liability for defamation. And it is entitled to them regardless of the name of the tort, and . . . regardless of whether the tort suit is aimed at the content of the broadcast or the production of the broadcast." *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1355 (7th Cir.1995) (citing *Hustler*, 485 U.S. at 46, 108 S.Ct. 876); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1160 (9th Cir.1995) (dismissing defamation claim because statements were protected by the First Amendment and holding that the same statements could not support a privacy claim).

For these reasons, the First Amendment bars Cowras from recovering dam-

**210**

ages under the generally applicable laws of intentional and negligent infliction of emotional distress where those claims are based on constitutionally protected conduct. To hold otherwise would be tantamount to allowing him to use an emotional distress cause of action to avoid the strict requirements for establishing a privacy claim. *See Hustler,* 485 U.S. at 57, 108 S.Ct. 876; *see also Petyan v. Ellis,* 200 Conn. 243, 254–55, 510 A.2d 1337 (1986) (holding that only unprivileged conduct can support a claim of intentional infliction of emotional distress).

## II. *Intentional Infliction of Emotional Distress*

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove that (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the emotional distress; and (4) the emotional distress was severe. *See DeLaurentis v. City of New Haven,* 220 Conn. 225, 266–67, 597 A.2d 807 (1991). The media defendants maintain that their conduct was not extreme and outrageous as a matter of law.

### A. *Extreme and Outrageous Conduct*

The media defendants assert that the fact that they falsely reported that Cowras filed a police brutality suit, but withdrew it after his lawyer viewed the videotape, is not, as a matter of law, sufficiently extreme and outrageous.

In response, Cowras argues that this conduct is sufficient because it portrays him as a dishonest and conniving individual and attacks his character and integrity. It is one thing, he claims, for him to have threatened such a suit when he was intoxicated, but it is far more egregious if he actually did so when he was sober. Cowras further asserts that the media defendants conduct is compounded by the fact

that the Hard Copy episode was designed to humiliate and embarrass him to increase the entertainment value of the program and because the media defendants knew that he was especially susceptible to emotional harm from public embarrassment.

Determination of whether the alleged conduct is sufficiently extreme and outrageous to sustain the cause of action is an issue for the court in the first instance. *See DeLeon v. Little,* 981 F.Supp. 728, 737 (D.Conn.1997). If a defendant's conduct is merely insulting, displays bad taste, or results in hurt feelings or embarrassment, the claim is generally dismissed as a matter of law. Indeed, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 738.

Here, the court does not find that the media defendants' conduct was sufficiently extreme and outrageous as a matter of law. Contrary to Cowras's assertion, there is nothing in the record to support his contention that the media defendants should have known he was particularly susceptible to emotional harm from public embarrassment. Moreover, as this court previously found, there is no evidence that the media defendants acted recklessly or that their failure to interview the plaintiff was an extreme departure from responsible journalistic practices. Accordingly, the court is unwilling to find as a matter of law that the media defendants' conduct meets the extremely high threshold of outrageous and intolerable conduct that is required to sustain a claim for intentional emotional distress. *See Petyan v. Ellis,* 200 Conn. at 253–54, 510 A.2d 1337.

## III. *Negligent Infliction of Emotional Distress*

To recover on a claim of negligent infliction of emotional distress, Cowras

must prove that the media defendants knew or should have realized that their conduct involved an unreasonable risk of causing emotional distress and that the distress might result in illness or bodily harm. *See Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978). The gist of the tort is foreseeability. *See Doe v. Cuomo,* 43 Conn.Supp. 222, 233, 649 A.2d 266 (Conn. Super.1994).

The media defendants maintain that Cowras has no evidence to support a finding that their alleged negligent conduct was so unreasonable that it presented a foreseeable risk of causing Cowras emotional distress. Reporting that Cowras filed a police brutality suit, they argue, was entirely consistent with the information they had at the time the episode was aired, and they thus had no reason to anticipate that Cowras would be harmed by their actions.

Cowras submits that there is sufficient evidence to create a genuine factual dispute as to whether the media defendants' conduct involved an unreasonable risk of causing emotional distress. The court agrees.

There is evidence in the record that the media defendants, despite being put on notice that Cowras may not have filed a false lawsuit,[2] made no attempt to ascertain the truth for fear of killing what they believed was a "great story." Indeed, the media defendants portrayed Cowras as a deceitful and dishonest person who followed through on his drunken threats to file a police brutality suit until he found out that he had been "caught on tape," and emphasized that he was the one who was going to be embarrassed and humiliated by their story.

Based on the totality of the circumstances and the permissible inferences that could be drawn from the evidence, the court concludes that a reasonable jury could find that the media defendants' conduct posed an unreasonable risk of causing emotional distress and that such distress might result in illness or bodily harm.

The court also finds that there is a genuine factual dispute as to whether the media defendants' conduct was a proximate cause of Cowras's emotional distress.

For these reasons, the media defendants' motion to dismiss the negligent infliction of emotional distress claim is denied.

## IV. *Punitive Damages*

Finally, the media defendants move to strike Cowras's claim for punitive damages. They assert that the First Amendment does not permit such damages from media defendants unless there is actual malice, *see Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and this court previously found that Cowras cannot establish actual malice in this case. The court agrees.

Accordingly, Cowras's claim for punitive damages against the media defendants is stricken.

### CONCLUSION

For the foregoing reasons, the media defendants' motion for summary judgment [doc. # 89] is GRANTED as to Cowras's claim for intentional infliction of emotional distress and his claim for punitive damages. The motion for summary judgment on the claim of negligent infliction of emotional distress is DENIED.

---

2. There is evidence in the record that the media defendants had contradictory and incomplete information as to whether Cowras actually filed a police brutality suit. Officer Crosby's statements to the Hard Copy reporter on this issue were ambiguous and conflicting and his wife also indicated that she was uncertain whether Cowras actually filed a lawsuit.