**Hema MENON**

v.

**Lawrence FRINTON**

**No. 3:99CV247 (AHN).**

United States District Court, D. Connecticut.

March 30, 2001.

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiff.

Thomas R. Gerarde, Paul Erickson, Melinda A. Powell, Howd & Ludorf, Hartford, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The plaintiff, Hema Menon ("Menon"), brings this 42 U.S.C. § 1983 action against the defendant, Lawrence Frinton ("Frinton"). Menon alleges violations of her rights under the first, fourth and fourteenth amendments to the United States Constitution. She also asserts a state law claim of intentional infliction of emotional distress.

Now pending before the court is Frinton's Motion for Summary Judgment [doc. # 13]. For the reasons that follow, the motion is GRANTED.

### STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See.* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (citation and internal quotation marks omitted). The party seeking summary judgment bears the burden of showing that no genuine dispute about an issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The court must draw all factual inferences and assertions in favor of the party opposing summary judgment. *See Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir.1997).

Summary judgment dismissing a claim based upon a defense of qualified immunity may be granted if the court finds that the "asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right ." *In Re State Police Litigation*, 88 F.3d 111, 123 (2d Cir.1996). If a reasonable trier of fact could find that the defendant's actions were objectively unreasonable, then the defendants are not entitled to summary judgment. *See Lennon v. Miller*, 66 F.3d 416, 421 (1995). In cases where the defense alleges qualified immunity, the courts are not concerned with the correctness of the defendant's conduct, but rather the objective reasonableness of their actions in light of the circumstances confronting them at the scene. *Id.*

### FACTS

The following facts are undisputed. Frinton was employed as a police officer by the City of Danbury. *See* Defendants'

9(c)(1) Statement of Undisputed Facts ¶ 1. [hereinafter "Defs.' Stat."] and Plaintiff's 9(c)(2) Statement ¶ 1 [hereinafter Pl.'s Stat."]. As a police officer, Frinton has the authority to enforce the traffic laws of the State of Connecticut. *See* Defs.' Stat. ¶ 2 and Pl.'s Stat. ¶ 2. On March 3, 1990, Frinton was called to investigate a traffic accident involving Menon and Gale McNamara ("McNamara") in Danbury, Connecticut. *See* Defs.' Stat. ¶ 3 and Pl.'s Stat. ¶ 3. Frinton interviewed both drivers regarding the accident. *See* Defs.' Stat. ¶ 4 and Pl.'s Stat. ¶ 4. Frinton determined that Menon was at fault, but did not issue her a summons. *See* Defs.' Stat. ¶ 5 and Pl.'s Stat. ¶ 5. Menon believed that Frinton's conclusion that she was at fault was not based upon the results of his investigation, but was the result of bias because McNamara was the wife of a fellow police officer. On May 9, 1990, Menon filed an accident report with the Connecticut Department of Motor Vehicles ("DMV"). *See* Defs.' Stat. ¶ 6 and Pl.'s Stat. ¶ 6. In her report, Menon explained her version of the accident and claimed that Frinton was biased against her.

Six years later, on February 20, 1996, Menon was involved in a motor vehicle accident with Ann Dux ("Dux") in Danbury, Connecticut. *See* Defs.' Stat. ¶ 7 and Pl.'s Stat. ¶ 7. By chance, Frinton also investigated this accident. *See* Defs.' Stat. ¶ 8 and Pl.'s Stat. ¶ 8. During Frinton's investigation, Menon told him that she was traveling behind Dux before the accident occurred. *See* Defs.' Stat. ¶ 9 and Pl.'s Stat. ¶ 9. Frinton interviewed the drivers, analyzed the damage to the vehicles, and concluded that Menon was at fault. He charged her with following too closely in violation of Connecticut General Statutes § 14–240. *See* Defs.' Stat. ¶ 10 and Pl.'s Stat. ¶ 10. Menon believes that Frinton's conclusion that she was at fault was not based upon the facts, but on his desire to

retaliate against her for filing a complaint against him six years earlier. Frinton maintains that at the time of the 1996 accident he had no recollection of Menon or the accident that had occurred six years earlier. *See* Defendant's Memorandum of Law ("Def's Mem.") Exhibit A, ¶¶ 10, 11.

## DISCUSSION

Menon claims that Frinton (1) violated her right to be free from false arrest and malicious prosecution as guaranteed by the Fourth Amendment; (2) found her at fault in the 1996 accident in retaliation for her complaint against him to the Department of Motor Vehicles in 1990; (3) violated her equal protection rights under the Fourteenth Amendment; (4) violated her First Amendment right to freedom of speech, freedom to petition the government for redress of grievances, and right of access to the courts; and (5) violated Connecticut law by intentionally inflicting emotional distress.

Frinton maintains that he is entitled to summary judgment because (1) his actions during the March 3, 1990, and February 20, 1996, motor vehicle accidents were objectively reasonable; (2) there is no evidence of improper motive supporting a retaliation claim; (3) there is no evidence of discriminatory conduct supporting an equal protection claim; and (4) the claim for intentional infliction of emotional distress does not satisfy the extreme and outrageous standard. The court agrees.

## I. *Qualified Immunity*

Menon alleges that Frinton violated her right to be free from false arrest and malicious prosecution in violation of the Fourth Amendment in connection with his investigation of the two automobile accidents and issuance of a summons for a motor vehicle violation. Frinton asserts that he is entitled to qualified immunity for these claims based upon the "objective reasonableness" of his actions.

 "Qualified immunity serves important interests in our political system." *Sound Aircraft Servs., Inc. v. Town of East Hampton*, 192 F.3d 329, 333 (2d Cir. 1999). Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrine of qualified immunity entitles public officials to freedom from suits for acts performed in their official capacity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Martinez v. Simonetti*, 202 F.3d 625, 633–34 (2d Cir.2000) (quoting *Weyant v.. Okst*, 101 F.3d 845 (2d Cir.1996)). Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act. *See Lennon*, 66 F.3d at 421. The objective reasonableness test is met and a defendant is entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the defendant's conduct. *See Malley v. Briggs*, 475 U.S. 335, 340–41, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Here, because it is clearly established that an individual may not be arrested or issued a motor vehicle summons without probable cause, *see Lee*, 136 F.3d at 102, the success of Frinton's claim of qualified immunity depends on whether his actions were supported by probable cause and

whether his conduct in making that determination was objectively reasonable. *See Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (holding that qualified immunity is appropriate if officers of reasonable competence could disagree on whether the probable cause test was met).

■■■ For the purpose of the qualified immunity analysis within the context of a claim such as the one asserted here, the court considers only the facts that were available to the police officer, or could have been perceived by him at the time he engaged in the challenged conduct. *Cf. Lowth v. Town of Cheektowaga,* 82 F.3d 563, 567 (1996). "The existence of probable cause must be determined on the basis of the totality of the circumstances." *Harford v. County of Broome,* 102 F.Supp.2d 85, 92 (N.D.N.Y.2000). *See also Moore v. Comesanas,* 32 F.3d 670, 673 (2d Cir.1994) (holding that where the existence of probable cause is predominantly factual in nature, it is properly presented to the jury).

■■■ Based on the totality of the undisputed facts, the court finds that it was objectively reasonable for Frinton to believe that probable cause existed to find Menon responsible for the 1990 and 1996 car accidents. In both accidents, Frinton's conclusions were based on his analysis of the facts as he observed them at the scene, including the damage to each vehicle and the statements of both drivers. In particular, with regard to the 1996 accident, Frinton relied on Menon's admission that she was traveling behind Dux. It is clear that officers of reasonable competence could disagree that Menon's admission, together with the other evidence, was sufficient to find probable cause that Menon violated C.G.S. 14-240. There is absolutely no evidence that Frinton was influenced by the fact that the other driver involved in the 1990 accident was the wife of a police officer or that this fact played any part in Frinton's probable cause determination.

Because Frinton had probable cause to issue the summons to Menon, he did not violate a clearly established constitutional right and his conduct was objectively reasonable. Accordingly, Frinton is entitled to qualified immunity on Menon's false arrest and malicious prosecution claims as a matter of law.

Based on this conclusion, Frinton is also entitled to qualified immunity on Menon's claim that his conduct violated her First Amendment right to freedom of speech, freedom to petition the government for redress of grievances, and her right of access to the courts.

## II. *Retaliation*

There is also no evidence to support Menon's allegation that Frinton found her at fault in the 1996 accident in retaliation for the bias complaint she filed against him in 1990. Menon's conclusory allegations of retaliation and improper motive are not sufficient to defeat. Frinton's qualified immunity defense.

■■■ "In order to state a valid due process claim for retaliation, a plaintiff must allege that he or she engaged in conduct that was constitutionally protected and that retaliation against the protected conduct was a 'substantial' or 'motivating' factor in the defendant's actions." *Blue v. Koren,* 72 F.3d 1075, 1082 (2d Cir.1995). On a "motion for summary judgment asserting a qualified immunity defense in an action in which an official's conduct is objectively reasonable but an unconstitutional subjective intent is alleged, the plaintiff must proffer particularized evidence of direct or circumstantial facts, as suggested in Justice Kennedy's concurrence in *Siegert,* 500 U.S. at 236, 111 S.Ct. 1789, supporting the claim of an improper motive in

order to avoid summary judgment." *Id.* at 1084, 111 S.Ct. 1789. *See also Hemphill v. Schott,* 141 F.3d 412, 420 (2d Cir.1998); *Ford v. Moore,* 237 F.3d 156, 162 (2d Cir. 2001). This evidence may include "expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Id.* Lastly, "a conclusory proffer of an unconstitutional motive should not defeat the motion for summary judgment." *Id.*

▇▇▇ Here, Menon does not submit any particular facts supporting her allegation of retaliation. She merely alleges that Frinton's conclusion that she was at fault was not based upon the results of his investigation, but was tainted by his desire to seek revenge for the bias complaint she filed against him six years earlier. In contrast to this conclusory allegation, the record evidence supports a finding that Frinton conducted a proper investigation that was not tainted in any way. Menon stated in her deposition that Frinton never mentioned the 1990 accident while he was investigating the 1996 accident. Def's Mem., Exhibit E, pg. 29. Moreover, there is nothing to contradict or discredit Frinton's assertion that he had no prior recollection of Menon or of the routine motor vehicle accident that had occurred six years earlier. Def's Mem., Exhibit A, ¶¶ 10, 11. Menon submits no evidence that Frinton made any inappropriate statements or remarks that could reveal an improper motive, or that he inappropriately singled her out, or that he took any unusual actions at all during the course of his investigation. Menon's failure to proffer any particularized evidence of the claimed improper motive is fatal to her retaliation claim.

III. *Equal Protection*

Although Menon initially claimed that she was discriminated against on the basis of her race, she has since acknowledged that there is no evidence of racial or ethnic bias. Nonetheless, she maintains that the fact that she was found responsible for both accidents is sufficient evidence that Frinton acted maliciously or with bad faith. This claim is without merit.

▇▇▇ The Equal Protection Clause of the Fourteenth Amendment directs that similarly situated persons be treated alike. *See Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In order to establish an Equal Protection violation based upon selective enforcement, the plaintiff must prove that (1) in comparison with others similarly situated, she was selectively treated, and (2) that such selective treatment was based on impermissible conditions such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *See Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000); *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 16 (2d Cir.1999); *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir. 1994); *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992).

▇▇▇ Menon offers no evidence or explanation of how she was treated differently than any other another similarly-situated individual. Further, Menon acknowledges that Frinton did not make any statements to her suggesting bias based upon her national origin. Her claim is apparently based solely on the fact that Frinton found her responsible for both the 1990 and 1996 accidents. This speculation and conjecture does not establish an equal protection claim.

## IV. Intentional Infliction of Emotional Distress

Finally, the Court agrees with Frinton's claim that Menon's intentional infliction of emotional distress claim must fail because his conduct was not extreme and outrageous as a matter of law.

In order to prevail on a claim for intentional infliction of emotional distress the plaintiff must allege that: (1) the defendant intended or knew that emotional distress would likely result from its conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused plaintiff distress; and (4) plaintiff's distress was severe. See Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986). The disputed conduct must exceed all bounds tolerated by decent society, and cannot be merely rude, tactless or insulting. See Petyan, 200 Conn. at 254, 510 A.2d 1337 (1986).[1] Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. See Johnson v. Chesebrough–Pond's USA Co., 918 F.Supp. 543, 552 (D.Conn.1996); see also Bell v. Board of Education, 55 Conn.App. 400, 410, 739 A.2d 321 (1999). Only where reasonable minds disagree does it become an issue for the jury. Bell at 55 Conn.App. 410, 739 A.2d 321 (1999). There is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action as the court must look to the specific facts and circumstances of each case in making its decisions." Rhonda Craddock v. Church Community Supported Living Association, No.

990592711S, 2000 WL 33159150, 2000 Conn.Super. LEXIS 3008 (Conn.Super.Ct. November 13, 2000). "If a defendant's conduct is merely insulting, displays bad taste, or results in hurt feelings or embarrassment, the claim is generally dismissed as a matter of law." Cowras v. Hard Copy, 56 F.Supp.2d 207, 210 (D.Conn. 1999).

Here, Menon has not alleged any facts which satisfy the requisite standard of extreme and outrageous conduct. The average member of the community would not find Frinton's acts in investigating routine traffic accidents and attributing fault to one of the drivers to be extreme and outrageous. Menon has failed to present any facts to satisfy the requirement of extreme and outrageous conduct to sustain a claim of intentional infliction of emotional distress.

## CONCLUSION

Based on the foregoing analysis, the defendant's motion for summary judgment [doc. # 13] is GRANTED. The Clerk of the Court is ordered to enter judgment in favor of the defendant and to close the case.

---

1. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965).