Brant BLOOM, Plaintiff,

v.

Fernando LUIS, Defendant.

Civil Action No. 3:00–cv–1973(JCH).

United States District Court,
D. Connecticut.

March 14, 2002.

John R. Williams, Williams & Pattis, New Haven, CT, for plaintiff.

James Newhall Tallberg, Updike, Kelly & Spellacy, P.C., Hartford, CT, for defendant.

## RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 13)

HALL, District Judge.

The plaintiff, Brant Bloom ("Mr. Bloom"), brings this action alleging that the defendant, Fernando Luis ("Officer Luis"), violated his constitutional rights under the Fourth and Fourteenth Amendments. The plaintiff also asserts a state law claim for intentional infliction of emotional distress.

The defendant brings this motion for summary judgment, arguing that the plaintiff has failed to establish a constitutional violation and that the defendant is shielded from liability by the doctrine of qualified immunity. Further, the defendant asserts that the plaintiff has failed to make out a claim of intentional infliction of emotional distress. For the reasons stated below, the court grants the defendant's motion in part and denies it in part.

## I. BACKGROUND

The plaintiff, Mr. Bloom, was married to Jill Bloom from September 1989 until July 2000. During their marriage, the couple separated twice, primarily due to an extramarital affair Jill Bloom had engaged in with Mike Bellagamba ("Bellagamba"). On December 24, 1999, the Blooms were attempting to reconcile from the second of their separations. That morning, Jill Bloom went to exercise at the Ridgefield Fitness Center ("Center"). When she returned, Mr. Bloom learned that she had seen Bellagamba at the Center as she was leaving. Mr. Bloom told his wife that he was going down to the Center to speak with Bellagamba. Despite Jill Bloom's pleading, Mr. Bloom proceeded to drive down to the Center. According to Mr. Bloom, he never intended to confront Bellagamba, but rather drove to the Center to gauge his wife's reaction in order to determine whether she had renewed her affair and in order to get her upset. Indeed, after Mr. Bloom had arrived at the Center and parked in the parking lot, he saw Bellagamba exit the Center but he did not speak with him. Bellagamba drove away from the Center and Mr. Bloom remained in his car, parked in the lot, speaking intermittently with his wife on his cell phone.

According to Dan Gaita, a Center employee, Jill Bloom phoned the Center and told him that someone was in the parking lot of the Center waiting for Bellagamba to leave and that she was concerned for his safety. Despite her request not to get the police involved, Gaita informed Jill Bloom that it was the Center's policy to call the police in such a situation. Jill Bloom denies that she ever phoned the Center.

Gaita informed the manager, James Johnstone, of Jill Bloom's call. According to Johnstone, once he confirmed that there was a man sitting in a car in the parking lot, he telephoned the Ridgefield Police Department and asked that an officer respond. Johnstone later prepared a written report for the police department detailing the incident.

Officer William Browning received Johnstone's call and dispatched Officer Luis to investigate. Officer Luis arrived at the Center, parked his cruiser and went into

the Center. According to Officer Luis, he went into the Center to verify the complaint with Johnstone. Having done so, he went outside and parked his cruiser near Mr. Bloom's car. What occurred during the interaction between Officer Luis and Mr. Bloom is in dispute.

According to Mr. Bloom, Officer Luis parked his cruiser so that he blocked Mr. Bloom's car, preventing him from driving away. Officer Luis then approached the car and began to speak in a loud and threatening voice, telling Mr. Bloom that he was the brother-in-law of Bellagamba and that Mr. Bloom should stay away from him. In response to Mr. Bloom's reply that he was going to leave, Officer Luis ordered Mr. Bloom to stay and told Mr. Bloom that "You will leave when I am done talking to you." Mr. Bloom told Jill Bloom, who he was still talking to on his cell phone, that Officer Luis was being tough because he had his weapon on. Officer Luis then indicated that he was going to remove his police belt and fight Mr. Bloom right there in the parking lot. Mr. Bloom remained in his vehicle while Officer Luis yelled curses at him through the window, pointed his finger in Mr. Bloom's face and threatened him. Mr. Bloom was speaking to Jill Bloom on his cell phone during this time period. The whole exchange took between five and ten minutes. Eventually, one of the cars parked next to Mr. Bloom left the lot and he was able to drive out of his spot. He asked Officer Luis for his name and his badge number and indicated that he was going to file a complaint with the police department.

According to Officer Luis, when he approached Mr. Bloom's car he asked Mr. Bloom what he was doing there and Mr. Bloom rolled down his window but ignored him and continued talking on his phone. Officer Luis then explained that he was investigating a complaint of someone com-

ing to inflict harm on a Center member and asked Mr. Bloom if he was a member of the Center and whether he was waiting for anyone. Mr. Bloom then became defensive and irate and said "No, who would I be waiting for?" Officer Luis then asked if he was waiting for Bellagamba to which Mr. Bloom responded "Why, do you know, do you know he is fucking my wife Jill?" Officer Luis then told Mr. Bloom that he was Bellagamba's brother-in-law. Mr. Bloom asked for Officer Luis's badge number and name and indicated that he was going to file a complaint and drove away.

After leaving the Center, Mr. Bloom did proceed to the Ridgefield Police Department and spoke with Sergeant John McAllister about what had occurred. Sergeant McAllister advised Mr. Bloom that he would investigate the matter. Sergeant McAllister then spoke with Officer Browning and Officer Luis about the incident. According to Sergeant McAllister, after informing Mr. Bloom of the results of the investigation, Mr. Bloom indicated that he did not want to file a formal complaint. Mr. Bloom denies that he ever told Sergeant McAllister that he was not going to pursue the matter.

## II. DISCUSSION

### A. Standard of Review

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Fed.R.Civ. P.56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residen-*

*tial Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Graham*, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton* 202 F.3d at 134. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

### B. Fourth Amendment Claim

Officer Luis argues, in support of his motion, that Mr. Bloom's Fourth Amendment claim must fail because the facts demonstrate that Mr. Bloom was not seized or arrested and, assuming arguendo, that he was seized and arrested, Officer Luis had reasonable suspicion to effectuate the stop and probable cause to arrest. Mr. Bloom argues, in response, that material issues of fact exist about the encounter which make summary judgment inappropriate.

Under 42 U.S.C. § 1983, an individual may bring a claim for damages against another who, acting under the color of state law, deprived him of a federal right. *Richardson v. McKnight*, 521 U.S. 399, 403, 117 S.Ct. 2100, 138 L.Ed.2d 540

(1997). Thus, "to prevail on a section 1983 claim, a plaintiff must prove that the challenged conduct was attributable at least in part to a person acting under color of state law, and that the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 136–37 (2d Cir.1999) (citing *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993)). In this case, Mr. Bloom has alleged a violation of his Fourth Amendment rights.

■ There are "three levels of interaction between agents of the government and private citizens." *United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir.1995). In addition to arrests and *Terry* stops, there are also consensual encounters with police that do not implicate Fourth Amendment protections. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In order to prevail on a § 1983 claim under the Fourth Amendment based on an allegedly unlawful *Terry* stop or unlawful arrest, a plaintiff first must prove that he was seized. *Brown v. City of Oneonta*, 221 F.3d 329, 340 (2d Cir.2000). A police officer may approach an individual and ask an individual questions without intruding on Fourth Amendment rights. *United States v. Lee*, 916 F.2d 814, 819 (2d Cir.1990).

■ To determine whether a police encounter constitutes a seizure, a court must consider whether a reasonable person would feel "free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 439, 111 S.Ct. 2382. Factors that "strongly suggest" that a police encounter has become a seizure include:

> the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer;

language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects ... and a request by the officer to accompany him to the police station or a police room.

*Brown v. City of Oneonta,* 221 F.3d at 340 (citations omitted).

■ Whether a seizure occurred is a question of law. *United States v. Peterson,* 100 F.3d 7, 11 (2d Cir.1996). However, the underlying facts in this case are in dispute. If the encounter between Officer Luis and Mr. Bloom occurred as related by the Officer then there clearly was no seizure, and there would be no Fourth Amendment rights implicated. However, Mr. Bloom has alleged a set of facts which, if a fact finder found them, could, as a matter of law, constitute a seizure. Specifically, Mr. Bloom has alleged that Officer Luis used a very threatening tone, parked his vehicle to make exit by Mr. Bloom impossible and told Mr. Bloom that he could not leave until he was told to. Coupled with threatening and abusive behavior, such a set of facts could constitute a seizure and, thus, Mr. Bloom's Fourth Amendment rights would be implicated.

The material issues of fact in dispute make it impossible at this time for the court to rule, as a matter of law, whether a seizure occurred. The dispute regarding what occurred during the encounter at issue also precludes a determination of whether, if a investigatory stop did occur, a legitimate *Terry* stop turned into a *de facto* arrest. If such an arrest took place, further issues would arise regarding whether probable cause existed for an arrest. These issues cannot be resolved until the facts are determined. Therefore, given the facts in dispute, the court denies the defendant's motion for summary judgment as to the Fourth Amendment claim.

■ However, the court does find, as a matter of law, that if a *Terry* stop did occur, Officer Luis did have reasonable suspicion to effectuate the stop. The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. 4. Police have constitutional authority consistent with the Fourth Amendment to briefly detain a suspect when an officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). While reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). "Reasonable suspicion, like probable cause, is dependent upon both the content of the information possessed by the police and its degree of reliability." *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). "These two factors— the quantity of information and its quality or reliability— are inverse variables in the reasonable suspicion calculus: if the information is highly reliable, there need not be much of it, but if it has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion.'" *United States v. Hoskie,* 2000 WL 1052022, *4(D.Conn.2000)(citing *Alabama v. White, supra* ).

■ In assessing the reasonableness of a *Terry* stop, the court must consider the totality of the circumstances of each case "to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). "In

determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts . . . ." *Terry*, 392 U.S. at 27, 88 S.Ct. 1868.

■ In this case, Officer Luis was acting upon a complaint made by the Center regarding a man who was waiting in the parking lot. Having confirmed the complaint with the Center employee, Officer Luis then had reasonable suspicion to question Mr. Bloom who was waiting in the parking lot. Approaching Mr. Bloom to inquire about his presence in the parking lot was justified based on the tip from the Center that criminal activity may have been imminent. *See e.g., United States v. Hoskie*, 2000 WL 1052022, at *8–9 (D.Conn.2000). There are no issue of fact in dispute which would conflict with the court's finding on this issue. The court makes no finding regarding whether the justifiable *Terry* stop remained limited to the scope of the circumstances which allowed the stop in the first place or whether the stop, due to Officer Luis' behavior, turned into a *de facto* arrest. *See United States v. Babwah*, 972 F.2d 30, 33 (2d Cir.1992)("If an investigative stop based on reasonable suspicion continues too long or becomes unreasonably intrusive, it will ripen into a de facto arrest that must be based on probable cause.").

## C. Fourteenth Amendment Claim

The defendant seeks summary judgment on the plaintiff's Fourteenth Amendment claim on the grounds that claims for false arrest are governed by the Fourth Amendment. The plaintiff argues, in response, that a substantive due process claim is appropriate in light of the facts alleged in this case.

The Supreme Court in *County of Sacramento v. Lewis* noted that "because we have always been reluctant to expand the concept of substantive due process, we held in *Graham v. Connor* that '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)(internal citations omitted). In *Graham v. Connor*, the Court held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Claims for unlawful seizure and arrest are also governed by the Fourth Amendment. *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir.1999). Although the Second Circuit has allowed Fourteenth Amendment claims to be brought for excessive use of force, those claims arose in cases in which there had been no seizure. *See e.g. Tierney v. Davidson*, 133 F.3d 189 (2d Cir.1998). In *County of Sacramento*, the Court explained that "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" 523 U.S. at 845, 118 S.Ct. 1708 (emphasis in the original).

■ Mr. Bloom has asserted claims of unlawful detention and arrest which are cognizable under the Fourth Amendment. If a fact finder found that a seizure had occurred of Mr. Bloom as alleged in the complaint, the appropriate vehicle through which the pursue his claim is the Fourth Amendment, not the Fourteenth Amendment.

■ If no seizure was found, the claim could be governed by the Fourteenth Amendment. However, if no seizure occurred, Mr. Bloom would be unable to satisfy the requirements of a substantive due process claim. "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995) (citations omitted). Therefore, in order to establish a claim under the Fourteenth Amendment, Mr. Bloom must prove that Officer Luis' actions were arbitrary or oppressive. If, however, a fact finder credits Mr. Bloom's version of events, the claim would be governed by the Fourth Amendment because the interaction between Mr. Bloom and Officer Luis would constitute a seizure. However, if a fact finder believed Officer Luis' account then, while not a seizure and arguably governed by the Fourteenth Amendment, there would be no facts to support a finding of arbitrary and oppressive conduct. A police officer approaching an individual on the basis of a complaint and questioning that person and then allowing him to leave is clearly not arbitrary or oppressive conduct.

Mr. Bloom has alleged claims of warrantless arrest, arrest without probable cause, unreasonable arrest or detention and detention without reasonable suspicion. If established, all of these allegations would be governed by the Fourth Amendment. *See Graham v. Connor*, supra. If Mr. Bloom fails to establish that his claims are governed by the Fourth Amendment, he will be unable to sustain a claim under the Fourteenth Amendment. Therefore, the court grants the defendant's motion as to the Fourteenth Amendment claim.

## D. Qualified Immunity

■ Officer Luis has asserted the defense of qualified immunity against Mr. Bloom's constitutional claims. In order to prevail on an action for damages under § 1983 against a government official, the plaintiff must show that the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Thus, the inquiry becomes first, whether the plaintiff alleges a violation of a constitutional right and then second, whether that right was "clearly established" at the time of the alleged violation. *Gabbert*, 526 U.S. at 290, 119 S.Ct. 1292. After this test is met, the qualified immunity defense "protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of his challenged act." *Menon v. Frinton*, 170 F.Supp.2d 190, 194 (D.Conn.2001) (citing *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995)).

■ Having found that Mr. Bloom has presented a viable Fourth Amendment claim against Officer Luis, the court must address the remaining prongs of the qualified immunity test. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)(indicating that the preferred approach to a qualified immunity inquiry is to first deter-

mine whether a violation of a right has been alleged). First, the court must determine whether the constitutional right alleged to have been violated was clearly established at the time of the violation. *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). Given the voluminous case law regarding investigatory stops and arrest since the Supreme Court's decision in *Terry v. State of Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the court finds that the law implicated in Mr. Bloom's Fourth Amendment claim was clearly established at the time of the stop. Specifically, it was clearly established at the time of the stop that an investigatory stop cannot exceed the scope of the circumstances which justified the interference in the first place. *United States v. Babwah,* 972 F.2d at 33. What happened during the encounter is in dispute, but if a factfinder concluded that Officer Luis exceeded the scope of the stop by threatening Mr. Bloom with physical violence or by effectuating an unjustified arrest, then he would not be able to assert a defense of qualified immunity. Similarly, it was clearly established at the time of this incident that a police officer needs probable cause to make an arrest. *Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Whether an arrest was actually effectuated in this case is, of course, in dispute. However, if a factfinder was to conclude that an arrest was made and that the arrest was not supported by probable cause, then Officer Luis would not be able to assert a defense of qualified immunity for conducting such an arrest.

 The court, therefore, moves to the final inquiry of whether it was objectively reasonable for Officer Luis to believe that his conduct was lawful. *Menon v. Frinton,* 170 F.Supp.2d 190, 194 (D.Conn.2001) (citing *Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995)). The court recognizes that the reasonableness inquiry under the Fourth Amendment is distinct from that under qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Therefore, a fact finder in this case could, for example, conclude that Officer Luis' behavior did cause the interaction to rise to the level of an arrest and that he did not have probable cause to effectuate such an arrest but that it was objectively reasonable for Officer Luis to believe that probable cause existed. The problem in this case is that there are substantial issues of fact in dispute regarding Officer Luis' behavior. If he did, in fact, threaten Mr. Bloom and offer to fight him, qualified immunity would not shield his actions even if the stop or the arrest were warranted. Therefore, the court cannot conclude, as a matter of law, that Officer Luis' actions were objectively reasonable because there are too many issues of fact in dispute. *See McKelvie v. Cooper,* 190 F.3d 58, 63 (2d Cir.1999)("Where ... there are facts in dispute that are material to a determination of reasonableness, summary judgment on qualified immunity grounds is not appropriate."). Therefore, the court finds that summary judgment is not appropriate on qualified immunity grounds and that the question of whether Officer Luis acted reasonably is an issue for trial, to be decided on the basis of the jury's findings regarding the factual issues in dispute. *See Oliveira v. Mayer,* 23 F.3d 642, 649–50 (2d Cir.1994).

**E. Intentional Infliction of Emotional Distress**

The defendant seeks summary judgment as to the plaintiff's claim for intentional infliction of emotional distress on the grounds that the facts alleged by the plaintiff are not enough to satisfy the standards of such a claim.

 In order to assert a claim for intentional infliction of emotional distress,

the plaintiff must establish four elements: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme or outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986); *see also Miner v. Town of Cheshire*, 126 F.Supp.2d 184 (D.Conn.2000). "Liability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner*, 126 F.Supp.2d at 194.

Whether Officer Luis' conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court. *See Johnson v. Chesebrough–Pond's USA Co.*, 918 F.Supp. 543, 552 (D.Conn.), *aff'd*, 104 F.3d 355 (2d Cir.1996). However, where reasonable people would differ on whether the behavior involved is extreme or outrageous and where there are facts at issue which would weigh on the reasonableness inquiry, it becomes a question for the jury. *McKelvie v. Cooper*, 190 F.3d 58, 63 (2d Cir.1999).

In this case there are disputed facts regarding what occurred between Officer Luis and Mr. Bloom. A determination of whether Officer Luis' conduct rose to the level of intentional infliction of emotional distress cannot be conducted at the summary judgment stage. In addition, if the court accepts the allegations as laid out in the complaint, a reasonable person could conclude that Officer Luis' conduct was extreme and outrageous. Mr. Bloom has alleged that Officer Luis, while in uniform, threatened him and yelled profanity and indicated that he was willing to fight the plaintiff in the parking lot. In *Moss v. Town of East Haven*, the court found that reasonable minds could differ over whether an officer, who was at the plaintiff's home, "with his hand on his exposed service revolver," threatening the plaintiff and not allowing the plaintiff to leave caused intentional infliction of emotional distress. No. CV970407351S, 2001 WL 1002684, at *2 (Conn.Super.2001). In *Johnson v. Martin*, the court made a similar holding regarding a claim which arose because a number of police officers sent the plaintiff a nasty Christmas card while he was incarcerated. No. CV960557415, 1996 WL 383351, at *3 (Conn.Super.1996). The court noted that the fact that the card was sent by officers, "whose sworn duty it is to protect and respect the rights of all citizens..." is more unsettling to a person than a message from a private citizen, "for it carries with it the implicit suggestion that the law's protection may not be available to the recipient in his time of need." *Id.* In addition, the court noted that the card gave the impression of being from the entire police force. *Id.* In this case, the fact that it was a police officer who was allegedly issuing threats and taunts clearly could cause a greater emotional impact than if the threats came from a private citizen. Indeed, Mr. Bloom testified at his deposition that he came to fear seeing any officer from the Ridgefield Police Department, concerned they would stop and harass him in retaliation. The fact that Officer Luis allegedly issued the threats while in uniform could have created the impression that he had the implicit support and power of the police department behind him. The added fact that Mr. Bloom asserts that he felt that he could not leave could give rise to a finding of extreme and outrageous behavior. Therefore, the court denies the defendant's motion for sum-

mary judgment as to the plaintiff's claim of intentional infliction of emotional distress.

## III. CONCLUSION

The court grants the defendant's motion for summary judgment (Dkt. No. 13) in part and denies it in part. The court denies the motion as to the Fourth Amendment claim, finding that material issues of fact exist which preclude a finding of whether a constitutional violation occurred. The court denies the motion as to the claim for intentional infliction of emotional distress because material issues of fact exist regarding whether the defendant's conduct was extreme and outrageous. Finally, the court grants the defendant's motion as to the Fourteenth Amendment claim, finding that the claims alleged in the complaint are governed by the Fourth Amendment.

**SO ORDERED.**